NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEVEN PSAROS, <br><br> Plaintiff, <br><br> v. <br><br> GREEN TREE SERVICING, LLC, STERN LAVINTHAL & FRANKENBERG LLC, and JOHN DOES I-X, <br><br> Defendants. | Civil Action No.: 15-4277 (JLL) (JAD) <br><br> OPINION |

**LINARES**, District Judge.

This matter comes before the Court by way of Defendant Stern Lavinthal & Frankenberg LLC ("Stern Lavinthal")'s Motion for Judgment on the Pleadings. (ECF No. 15.) The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies Stern Lavinthal's motion.

## FACTUAL BACKGROUND[1]

Plaintiff Steven Psaros purchased the property at 81 Arlington Ave, Hawthorne, NJ in 1999 and has resided there since that time. (ECF No. 1 ("Compl.") ¶ 6.) In January 2008 Plaintiff entered into a refinance loan whereby Plaintiff executed a promissory note payable to Mortgage Line Financial Corp, and also executed a mortgage to secure the loan. (*Id.* ¶¶ 7, 8.) Plaintiff

---

[1] This background is derived from Plaintiff's Complaint, and other documents that are integral to and/or explicitly relied upon in the Complaint, which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

alleges that he specifically negotiated the 2008 loan so that property insurance and real estate taxes would be paid directly by Plaintiff, rather than through an escrow account managed by the lender. (*Id.* ¶ 9; *see also id.* Ex. 1 ("Escrow Waiver").)

On September 22, 2010 BAC Home Loans Servicing, L.P. by way of its counsel Stern Lavinthal filed a debt collection foreclosure action under New Jersey docket F-46572-10. (*Id.* ¶ 11.) Stern Lavinthal was not retained to pursue debt collection activities until after the loan was in default. (*Id.* ¶ 12.)

In June 2013 Plaintiff received a letter from Green Tree advising that effective June 1, 2013, servicing was transferred to Green Tree. (*Id.* ¶ 13; *id.* Ex. 2.) By way of letters dated June 17, 2013 and July 18, 2013, Green Tree requested that Plaintiff send proof of property insurance to a designated Fax number. (*Id.* ¶¶ 14, 16; *id.* Exs. 3, 5.) On July 30, 2013 Plaintiff's insurance agent sent proof of property insurance to the designated fax number provided by Green Tree. (*Id.* ¶ 17; *id.* Ex. 6.) By way of letter dated August 4, 2013, Green Tree advised Plaintiff that force-placed insurance was obtained by Green Tree, and the policy (effective June 1, 2013) had an annual premium of $3,661.00. (*Id.* ¶ 19; *id.* Ex. 8.) After receiving the August 4, 2013 letter, Plaintiff again sent proof of insurance to Green Tree. (*Id.* ¶ 20; *id.* Ex. 9.)

In March 2014, a motion was granted in the foreclosure debt collection lawsuit substituting Green Tree as foreclosing plaintiff. (*Id.* ¶ 22.)

On April 24, 2015, Stern Lavinthal, on behalf of Green Tree, filed a motion for entry of judgment in the foreclosure action. (*See id.* Ex. 11 at 1-2 ("State Court Notice of Motion").) As part of the State Court Notice of Motion, Stern Lavinthal stated that it "shall file the attached Certification of Proof of Amount Due required by law which will establish that there is due upon

Plaintiff's obligation and mortgage the sum of $377,287.24 as of April 9, 2015, together with interest thereon." (*Id.* at 2.) In an attached document captioned "Proof of Amount Due Affidavit and Schedule" and dated April 23, 2015, Green Tree employee Danielle Froelich executed a certification of amount due, which included the sum of $10,974.37 for "Home Owners Insurance Premiums" due as of April 9, 2015 within the $377,287.24 total amount due. (Compl ¶ 23; *id.* Ex. 11 at 4-7 ("State Court Proof of Amount Due").) Additionally, Stern Lavinthal attorney Donna M. Miller submitted a "Certification of Diligent Inquiry" which states in relevant part as follows:

> 2. On April 7, 2015 and again on April 24, 2015, I communicated by client interface and overnight delivery with the following named employee(s) of plaintiff/plaintiffs servicer, who informed me that he/she has personally reviewed the documents submitted to the Court, affidavit of amount due and the original or a true copy of the note, mortgage, and recorded assignments, if any, and that he/she confirmed the accuracy of all documents:
>
> Name of employee(s) of Servicer for Plaintiff/Plaintiff: DANIELLE FROELICH
>
> Title of employee(s) of Servicer for Plaintiff/Plaintiff: FORECLOSURE REPRESENTATIVE
>
> Responsibilities of employee(s) of Servicer for Plaintiff/Plaintiff: REVIEWS AND CONFIRMS THE ACCURACY OF THE FORECLOUSRE AFFIDAVIT.
>
> 3. Based on my communication with the above-named employee(s) of Plaintiff, as well as my own inspection of the documents filed with the court and other diligent inquiry, I execute this certification to comply with the requirements of Rule 4:64-2(d) and Rule 1:4-8(a).

(Compl. Ex. 11 at 8-9 ("State Court Cert. of Diligent Inquiry").)

Plaintiff alleges that all times pursuant to the 2008 Mortgage Loan contract, Plaintiff has maintained an insurance policy on the property, has sent all insurance premiums to the insurance

3

carrier to pay for the hazard insurance policy, and has provided copies of same to the loan servicer upon request. (*Id.* ¶¶ 24, 26.) Accordingly, Plaintiff avers that Green Tree has not incurred costs of $10,974.37 for payment of insurance premiums. (*Id.* ¶ 25.)

## **PROCEDURAL HISTORY**

Plaintiff commenced this action on June 24, 2015, two months after the alleged false representation occurred, by filing a two count Complaint. (Compl.) With respect to Stern Lavinthal, Plaintiff alleges that it violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") by demanding payment of insurance premiums that were not actually owed under Plaintiff's loan agreement. (*Id.* at 6-8.)[2]

On August 17, 2015, Stern Lavinthal filed an Answer to the Complaint, which includes a cross-claim against its client Green Tree. (ECF No. 11.) On October 9, 2015: Stern Lavinthal filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b) (ECF No. 13); withdrew the Motion to Dismiss so that it could be re-filed as a Motion for Judgment on the Pleadings (ECF No. 14); and filed the instant Motion for Judgment on the Pleadings (ECF No. 15; *see* ECF No. 15-2 ("Mov. Br.")). On October 26, 2015, Green Tree filed an Answer to Stern Lavinthal's cross-claim and filed a cross-claim against Stern Lavinthal. (ECF No. 21.) On October 28, 2015, Stern Lavinthal filed an Answer to Green Tree's cross-claim. (ECF No. 23.) On November 23, 2015, Plaintiff filed opposition to the instant motion (ECF No. 25 ("Opp. Br.")), and on November 30, 2015, Stern Lavinthal filed a reply (ECF No. 26 ("Reply Br.")).

---

[2] The second count of the Complaint alleges violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.* against Green Tree only, and is thus not pertinent to the instant Motion. (*See* Compl. at 9-10.)

4

## LEGAL STANDARDS

### A. Motion for Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The pleadings are considered to be 'closed' after the complaint and answer have been filed, along with any reply to additional claims asserted in the answer." *Liberty Int'l Underwriters Canada v. Scottsdale Ins. Co.*, 955 F. Supp. 2d 317, 323 (D.N.J. 2013) (citation omitted). When a party makes a motion for judgment on the pleadings based on the defense of failure to state a claim upon which relief can be granted, the Court "appl[ies] the same standards as under Rule 12(b)(6)." *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir.1991); *see Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 146 (3d Cir. 2013).

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than

conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Among the public records a court may examine in order to resolve a motion to dismiss is a judicial proceeding from a different court or case, but a court must be mindful of the distinction between the existence of a fact and its truth. *S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426, 427 n.7 (3d Cir. 1999).

### B. Fair Debt Collection Practices Act

The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). When Congress passed the legislation in 1977, it found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and invasions of individual privacy." *Id.* § 1692(a). "As remedial legislation, the FDCPA must be broadly construed in order to give full effect to these purposes." *Caprio*, 709 F.3d at 148. Accordingly, the Court must "analyze the communication giving rise to the FDCPA claim 'from the perspective of the least sophisticated debtor.'" *Kaymark v. Bank of America, N.A.*, 783 F.3d 168, 174 (3d Cir. 2015)

(quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 221 (3d Cir. 2008). Furthermore, "[t]he FDCPA is a strict liability statute to the extent it imposes liability without proof of an intentional violation." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 368 (3d Cir. 2011).

"To prevail on an FDCPA claim, a plaintiff must prove that (1) she is a consumer, (2) the defendant is a debt collector, (3) the defendant's challenged practice involves an attempt to collect a 'debt' as the Act defines it, and (4) the defendant has violated a provision of the FDCPA in attempting to collect the debt." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014) (citation omitted). Here, Plaintiff has alleged all four elements (Compl. ¶¶ 28, 29, 33, 35), and Stern Lavinthal does not dispute the first three prongs. At issue is the fourth prong: whether Stern Lavinthal violated a provision of the FDCPA in attempting to collect the debt.

## ANALYSIS

Plaintiff alleges that Stern Lavinthal violated 15 U.S.C. § 1692e by making and/or using "false, deceptive and/or misleading representations in connection with its effort to collect a debt" (*id.* ¶ 35(a)), in particular with respect to "the character and amount of the debt it sought to collect from Plaintiff, in violation of 15 U.S.C. § 1692e(2)." (*Id.* ¶ 35(b).) The relevant statute states as follows:

> False or misleading representations. A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> . . .
> (2) The false representation of --
>   (A) the character, amount, or legal status of any debt; or

> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

15 U.S.C. § 1692e.

The issue before the Court is whether Stern Lavinthal violated § 1692e when it filed the State Court Notice of Motion and the State Court Cert. of Diligent Inquiry. As noted, the State Court Notice of Motion stated that Stern Lavinthal "shall file the attached Certification of Proof of Amount Due required by law which will establish that there is due upon Plaintiff's obligation and mortgage the sum of $377,287.24 as of April 9, 2015, together with interest thereon." (*Id.* at 2.) The State Court Notice of Motion referenced the State Court Proof of Amount Due, in which Green Tree employee Danielle Froelich included the sum of $10,974.37 for "Home Owners Insurance Premiums" in the $377,287.24 total amount due. (State Court Proof of Amount Due at 3.) With respect to the State Court Cert. of Diligent Inquiry, Stern Lavinthal attorney Donna M. Miller stated in relevant part as follows:

> 2. On April 7, 2015 and again on April 24, 2015, I communicated by client interface and overnight delivery with the following named employee(s) of plaintiff/plaintiffs servicer, who informed me that he/she has personally reviewed the documents submitted to the Court, affidavit of amount due and the original or a true copy of the note, mortgage, and recorded assignments, if any, and that he/she confirmed the accuracy of all documents:
>
> Name of employee(s) of Servicer for Plaintiff/Plaintiff: DANIELLE FROELICH
>
> Title of employee(s) of Servicer for Plaintiff/Plaintiff: FORECLOSURE REPRESENTATIVE
>
> Responsibilities of employee(s) of Servicer for Plaintiff/Plaintiff: REVIEWS AND CONFIRMS THE ACCURACY OF THE FORECLOUSRE AFFIDAVIT.

> 3. Based on my communication with the above-named employee(s) of Plaintiff, as well as my own inspection of the documents filed with the court and other diligent inquiry, I execute this certification to comply with the requirements of Rule 4:64-2(d) and Rule 1:4-8(a).

(State Court Cert. of Diligent Inquiry at 1-2.)

Stern Lavinthal moves for dismissal on two grounds. First, Stern Lavinthal contends that its alleged conduct does not implicate the FDCPA because it did not make a false representation. (Mov. Br. at 13-17; Reply Br. at 6-11.) Stern Lavinthal contends that Plaintiff's claim fails as a matter of law because the State Court Cert. of Diligent Inquiry "is utterly devoid of *any* false representations whatsoever" and that there is a fundamental and dispositive distinction between affirmatively "certifying the accuracy" of Green Tree's statements, as Plaintiff alleges in the Complaint, versus merely filing a "Certification of Diligent Inquiry," as required by the New Jersey Court Rules. (Mov. Br. at 3-4, 6-9, 13-17; Reply Br. at 6-11.) Second, Stern Lavinthal alternatively argues that Plaintiff waived his right to contest the amount owed to Green Tree by declining to oppose the underlying foreclosure, (Mov. Br. at 18-19; Reply Br. at 12-13), and similarly argues that the doctrine of judicial estoppel prohibits Plaintiff from taking a position inconsistent with his decision to forego any defense in the underlying foreclosure action (Mov. Br. at 20-21; Reply Br. at 13-14).

In opposition, Plaintiff first argues that because Stern Lavinthal's motion "includes several exhibits not directly relating to the controversy" the Court should either deny the motion outright or convert it to one for summary judgment. (Opp. Br. at 5-7.) Second, Plaintiff argues that the motion should be denied as procedurally untimely because the pleadings were still open when it was filed, thus making Rule 12(c) inapplicable on its face. (*Id.* at 7-8.) Third, even if the motion

is considered procedurally proper, Plaintiff contends that the Complaint sets forth a valid claim for relief under the FDCPA: by seeking to collect $10,974.37 not owed by Plaintiff (included in the total amount sought of $377,287.24), Stern Lavinthal violated 15 U.S.C. § 1692e(2) because it made a false representation of the amount of debt owed. (Opp. Br. at 8-13.) Plaintiff argues that Stern Lavinthal has not established the lone defense to liability where a debt collector has engaged in conduct that violates the FDCPA, and avers that "Stern Lavinthal cannot evade its responsibilities as a debt collector by blaming its client for providing it with factually inaccurate information used in the process of collecting a debt." (*Id.* at 13-15 (citing 15 U.S.C. § 1692k(c)).) Finally, Plaintiff argues that a debtor has no obligation to notify a debt collect that it has engaged in conduct violating the FDCPA prior to the debtor filing suit under the FDCPA, such that concepts of waiver and judicial estoppel are inapplicable to Plaintiff's claims. (*Id.* at 15-19.)

The Court agrees with Plaintiff.[3] The Court first addresses the statute and then discusses waiver and judicial estoppel.

### A. Plaintiff Has Stated a Claim Under 15 U.S.C. § 1692e(2)

When interpreting a statute, the court must begin with the text. *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 (3d Cir. 2011). "If the statute's plain language is unambiguous and expresses [Congress's] intent with sufficient precision, we need not look

---

[3] As an initial matter, the Court finds the motion—filed under Rule 12(c) as a motion for judgment on the pleadings—to be procedurally proper. A party may move for judgment on the pleadings under Rule 12(c) "[a]fter the pleadings are closed—but early enough not to delay trial[.]" Fed. R. Civ. P. 12(c). Here, Stern Lavinthal filed an Answer to Plaintiff's Complaint on August 17, 2015, and therein asserted a cross-claim against Green Tree. (ECF No. 11.) Thus, although the pleadings between Stern Lavinthal and Green Tree may not have been closed as of the date the instant motion was filed, the pleadings between Plaintiff and Stern Lavinthal were closed as of August 17, 2015. Accordingly, the Court finds the instant motion to be procedurally proper. Additionally, the Court declines to convert the instant motion to one for summary judgment, because all of the exhibits relied on by the parties are either attached to Plaintiff's Complaint or matters of public record subject to judicial notice that directly relate to Plaintiff's claims. *See Mayer*, 605 F.3d at 230; *S. Cross Overseas Agencies*, 181 F.3d at 426, 427 n.7.

further." *Id.* (citation omitted). But if the "literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters," then we are obligated to "construe statutes sensibly and avoid constructions which yield absurd or unjust results." *United States v. Fontaine*, 697 F.3d 221, 227 (3d Cir. 2012) (internal citations and quotation marks omitted). Where the plain meaning of a statute would lead to an absurd result, we presume "the legislature intended exceptions to its language [that] would avoid results of this character." *Gov't of Virgin Islands v. Berry*, 604 F.2d 221, 225 (3d Cir. 1979) (quoting *United States v. Kirby*, 74 U.S. (7 Wall.) 482, 487, 19 L.Ed. 278 (1868)).

A plain reading of the statute leads to the conclusion that a violation has occurred. In pertinent part, § 1692e(2)(A) prohibits the "false representation of . . . [the] amount . . . of any debt[.]" *Id.* Here, Plaintiff has alleged that Stern Lavinthal made a false representation with respect to "the character and amount of the debt it sought to collect from Plaintiff, in violation of 15 U.S.C. § 1692e(2)." (Compl. ¶ 35(b).) Specifically, Plaintiff alleges that "Stern Lavinthal's demand for payment of $10,974.37 was a demand for funds not owed and fees not incurred" (*id.* ¶ 35(d)), and that "Stern Lavinthal affirmed the use of false allegations in an effort to collect money not owed by Plaintiff" by filing the State Court Cert. of Diligent Inquiry (*id.* ¶ 35(c)). In essence, construing the Complaint in a light most favorable to Plaintiff, the Complaint alleges that when Stern Lavinthal attempted to collect $377,287.24 from Plaintiff on behalf of Green Tree, Stern Lavinthal misrepresented the amount of the debt in violation of the statute because the total amount sought included $10,974.37 in Home Owners Insurance Premiums which were allegedly not owed to Green Tree. Accepting the allegations as true, as the Court must at this stage, the Court finds that Plaintiff has sufficiently alleged a violation of the statute's plain language. Because the

statute's language is plain, the Court's function is "to enforce it according to its terms," so long as "the disposition required by that [text] is not absurd." *Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 759 (3d Cir. 2009) (quoting *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004)).

Finding a violation here, as required by a straightforward application of the plain language of the statute, is not absurd; rather, it is consistent with the Third Circuit's recent decisions in *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 248 (3d Cir.) *cert. denied*, 135 S. Ct. 487 (2014) and *Kaymark v. Bank of America, N.A.*, 783 F.3d 168 (3d Cir. 2015). In *McLaughlin*, a mortgagor alleged that a law firm representing the mortgagee had falsely represented the amount of the debt in a debt collection demand letter by including not-yet-incurred fees. The Third Circuit held that the mortgagor had stated a claim under § 1692e, reasoning that "[a]s the drafter of the Letter, [the law firm] is responsible for its content and for what the least sophisticated debtor would have understood from it." 756 F.3d at 246.

*Kaymark* extended this rationale from a demand letter to a formal pleading in a foreclosure action. In *Kaymark*, a mortgagor alleged that when a law firm initiated foreclosure proceedings on behalf of the mortgagee, the body of the foreclosure complaint filed by the law firm falsely represented the amount of the debt in violation of § 1692e by including not-yet-incurred attorneys' fees, title report fees, and property inspection fees. *Id.* at 171. Despite the fact that the alleged misrepresentation was contained in a foreclosure complaint, the Third Circuit held that the mortgagor had adequately stated a claim under § 1692e, upon an analysis of "the statutory text, as well at [sic] the case law interpreting the text[.]" *Id.* at 176.

First, the Court noted that it is "well-established in this Circuit" that "the FDCPA covers attorneys engaged in debt collection litigation[.]" *Id.* at 176-77 (citing *Heintz v. Jenkins*, 514 U.S.

12

291, 299 (1995) (holding that attorneys "engage[d] in consumer-debt-collection activity, even when that activity consists of litigation" are covered by the FDCPA); *Piper v. Portnoff Law Assocs., Ltd.*, 396 F.3d 227, 234 (3d Cir. 2005) ("[I]f a communication meets the [FDCPA's] definition of an effort by a 'debt collector' to collect a 'debt' from a 'consumer,' it is not relevant that it came in the context of litigation.")).[4] Second, the Court observed that Congress has not specifically excluded formal pleadings in foreclosure actions from the FDCPA. "Subsequent to *Heintz*, Congress twice amended the statute and exempted 'formal pleading[s] made in connection with a legal action' from 15 U.S.C. § 1692e(11), *as amended* Pub.L. No. 104–208, § 2305(a), 110 Stat. 3009, 3009–425 (1996), and 'communication[s] in the form of [ ] formal pleading[s]' from § 1692g(d), *as amended* Pub.L. No. 109–351, § 802(a), 120 Stat. 1966 (2006)." *Id.* at 177. "If Congress had wanted to exclude formal pleadings from the protections of the FDCPA under any of its other provisions, it could have done so. It did not. Thus, except for §§ 1692e(11) and 1692g(d), '[t]he amendment[s] by [their] terms in fact suggest[ ] that all litigation activities, including formal pleadings, are subject to the FDCPA.'" *Id.* (quoting *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 231 (4th Cir. 2007)). Ultimately, the Third Circuit concluded "that a communication cannot be uniquely exempted from the FDCPA because it is a formal pleading, or in particular, a complaint" and noted that "[t]his principle is widely accepted by our sister Circuits." *Id.* (citing cases); *see also id.* at 179 (concluding that the FDCPA does not "exclude foreclosure actions from its reach").[5]

---

[4] As noted, there is no dispute here that Stern Lavinthal acted as a "debt collector" when it "attempt[ed] to collect" a debt on behalf of Green Tree in the foreclosure proceeding, or that Plaintiff is a "consumer." 15 U.S.C. §§ 1692a(3), (6).

[5] The Court additionally found that the foreclosure complaint fell within the parameters of §1692e because the mortgagor, and not merely the court, was the intended recipient of the communication. *Id.* at 178 (concluding that the foreclosure complaint "was unquestionably a communication directed at Kaymark in an attempt to collect the debt" because the complaint "was served on Kaymark (directly or indirectly through his attorney)").

The holdings and underlying rationale in *McLaughlin* and *Kaymark* suggest that the FDCPA extends to the facts of this case. Keeping in mind that "[a]s remedial legislation, the FDCPA must be broadly construed in order to give full effect to [Congress's] purposes," *Caprio*, 709 F.3d at 148 (3d Cir. 2013), the Court finds that Plaintiff's allegations that Stern Lavinthal falsely represented the amount of the debt when it filed the State Court Notice of Motion and State Court Cert. of Diligent Inquiry in an attempt to collect the debt on behalf of the mortgagee are sufficient to state a claim under § 1692e(2). In other words, when analyzing the text of the statute and the relevant case law interpreting it, the Court cannot say that Congress intended to exempt litigation activities such as these from the purview of the FDCPA. As the Third Circuit noted, "[a]bsent a finding that 'the result [will be] so absurd as to warrant implying an exemption for' FDCPA claims involving foreclosure actions, [the Court] is not empowered to disregard the plain language of the statute." *Kaymark*, 783 F.3d at 179 (quoting *Heintz*, 514 U.S. at 295). "Thus, [defendant's] arguments are more 'properly addressed to Congress,' which 'is, of course, free to amend the statute accordingly.'" *Id.* (quoting *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604 (2010)).

### B. Plaintiff Did Not Waive His FDCPA Claim by Failing to Appear in the State Court Foreclosure Proceeding and the Court Declines to Judicially Estop Plaintiff from Asserting the Claim

Stern Lavinthal argues that because Plaintiff did not contest the amount of the debt in the foreclosure proceeding, he either waived his right to assert a claim under the FDCPA, or the Court should judicially estop him from doing so. Generally speaking, waiver is a "voluntary relinquishment—express or implied—of a legal right to advantage[.]" Black's Law Dictionary 1611 (8th ed. 2004). That has not occurred here. First, the Third Circuit has made clear that "a

consumer is not required to seek validation of a debt he or she believes is inaccurately described in a debt communication as a prerequisite to filing suit under § 1692e." *McLaughlin*, 756 F.3d at 248; *see also* 15 U.S.C. § 1692g(c) ("The failure of a consumer to dispute the validity of a debt . . . may not be construed by any court as an admission of liability by the consumer."). The Court also notes that the State Court Notice of Motion and the State Court Cert. of Diligent Inquiry—the documents giving rise to liability here—were filed in April 2015. Plaintiff initiated this lawsuit in June 2015. Thus, again keeping mind that "[a]s remedial legislation, the FDCPA must be broadly construed in order to give full effect to [Congress's] purposes," *Caprio*, 709 F.3d at 148 (3d Cir. 2013), the Court does not find that Plaintiff waived his right to assert a claim under the FDCPA. By failing to contest the amount owed in the foreclosure proceeding.

For similar reasons, the Court also declines to impose the doctrine of judicial estoppel, which is "a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that she has previously asserted in the same or in a previous proceeding." *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996). In short, Plaintiff did not assert a position in the foreclosure proceeding. He filed this lawsuit instead, which for the reasons explained above appears to be well within his rights.

## CONCLUSION

For the reasons above, the Court denies Stern Lavinthal's motion. An appropriate Order accompanies this Opinion.

DATED: December 21st, 2015

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE